UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIAN V.M., <br><br> Petitioner, <br><br> v. <br><br> SERGIO ALBARRAN, et al., <br><br> Respondents. | No. 1:26-cv-01280-TLN-DMC <br><br><br> **ORDER** |

This matter is before the Court on Petitioner Adrian V.M.'s[1] ("Petitioner") Motion for a Temporary Restraining Order ("TRO"). (ECF No. 3). Respondents oppose the motion but are amenable to converting it into a Motion for Preliminary Injunction. (ECF No. 8.) Petitioner did not file a reply. For the reasons set forth below, the Court GRANTS Petitioner's motion and issues a preliminary injunction.

///

///

---

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits Petitioner's full name, using only his first name and last initials, to protect sensitive personal information. *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

1

### I.  FACTUAL AND PROCEDURAL BACKGROUND

Petitioner has lived in the United States since he was five years old. (ECF No. 1 at 2.) A national of Mexico, Petitioner was admitted into the United States in 2004 on a non-immigrant visitor visa and overstayed his visa. (*Id.*) In the time since, Petitioner remained in the United States, went to school, developed a relationship with his community, and has no recollection of Mexico. (*Id.*; ECF No. 3-1 at 10.) Most of his family lives in the United States and he has one United States citizen child. (*Id.* at 3)

Petitioner was convicted of misdemeanor driving under the influence of alcohol in 2017 and 2024. (*Id.* at 2–3; ECF No. 8-2 at 3.) He was arrested but found not guilty of misdemeanor offenses on three other occasions. (ECF No. 1 at 3; ECF No. 8-2 at 3.) In 2023, Petitioner was arrested for misdemeanor simple battery and entered a conditional agreement where if he obeyed certain conditions, the Court would allow Petitioner to withdraw his no contest plea and dismiss the case. (ECF No. 1 at 2–3.) The case was dismissed on October 7, 2025. (*Id.* at 3.)

Petitioner was detained by immigration authorities on July 30, 2025, while attending a review hearing at Fresno County Superior Court related to the misdemeanor simple battery conditional plea. (*Id.*) The Government's documents describe his arrest as follows:

> Adrian [V.M.] was referred to the ICE/ERO Criminal Alien Program in Fresno, California, through the ACRIME database. December 11, 2024, [V.M.] was arrested by the Fresno Police Department and booked into Fresno County Jaily for Robber [sic], Vandalism and Dissuading Victim/Witness.[2]  As part of the booking process, [V.M.'s] fingerprints were submitted to multiple state and federal law enforcement databases (CIS, PCQS, CURP and ACRIMe). Based upon biometric confirmation of his identity and review of his criminal and immigration history, it was determined that [V.M.] is a removable alien and amenable to ICE enforcement action. [V.M.] has a non-immigrant visa application pending.
>
> On July 30, 2025, Supervisory Detention and Deportation Officer (SDDO) D. Torrez, Enforcement and Administration (DEA) Special Agent (SA) E. Garcia, SA R. Ramirez, and SA J. Dial, were attempting to locate and arrest [V.M.] at the California Superior Courthouse in Fresno, California. [V.M.] was scheduled to appear in Department 12 at 08:30 a.m. for a hearing related to his current pending Criminal charges.

---

[2]   Petitioner was not charged for these offenses. (ECF No. 8-2 at 3.)

> At approximately 08:50 a.m., SDDO D. Torrez, SA E. Garcia, SA R. Ramirez, and SA J. Dial, were surveilling the lobby area. SDDO Torrez immediately recognized [V.M.] from a prior arrest picture, as he was entering the building, furthermore, [V.M.] signed into the court log, verifying that it was him. SDDO D. Torrez and the SA's approached [V.M.] with their Law Enforcement badges plainly visible on their outermost garment. SDDO D. Torrez identified himself in the English language as an officer with Immigration and Custom's Enforcement and asked [V.M.] to state his full name. [V.M.] stated that his full name was Adrian [V.M.] SDDO D. Torrez asked [V.M.] what country he was born in and country of citizenship, [V.M.] refused to answer at that time. SDDO D. Torrez then asked [V.M.] if he had any documentation that would allow him to enter or remain in the U.S. lawfully. [V.M.] again remained silent and asked if he could talk to an attorney. SDDO D. Torrez informed [V.M.] he was under arrest for being illegally present in the U.S. and his case will be explained in detail at the Fresno ERO/ICE office. [V.M.] complied with all commands and SDDO D. Torrez placed handcuffs on [V.M.]. The handcuffs were checked for tightness and double locked to prevent accidental tightening. [V.M.] was escorted to a caged agency vehicle and transported to the Fresno ICE/ERO Sub-Office in Fresno, CA.

(ECF No. 8-3 at 2–3.)

Respondents subsequently commenced removal proceedings by issuing Petitioner a Notice to Appear. (ECF No. 1-1.) On November 24, 2025, Petitioner requested and was granted a custody redetermination hearing pursuant to 8 C.F.R. § 1236. (ECF No. 1 at 3.) On December 4, 2025, an Immigration Judge ("IJ") denied any form of release or bond, finding Petitioner to be a danger and a flight risk. (ECF No. 1-2.) Petitioner has been detained for approximately seven months at the Golden State Annex detention facility in Bakersfield. (ECF No. 1 at 3.)

On February 13, 2026, Petitioner filed a petition for writ of habeas corpus challenging his detention as violating the Immigration and Nationality Act and the Due Process Clause. (*Id.* at 11–13.)

**II.   STANDARD OF LAW**

For a preliminary injunction to issue, courts consider whether Petitioner has established "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Petitioner must "make a showing on all four prongs" of the *Winter* test. *Alliance for the Wild*

*Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  The Court may weigh Petitioner's showing on each of the *Winter* factors using a sliding-scale approach.  *Id.*  A stronger showing on the balance of the hardships may support issuing a preliminary injunction even where there are "serious questions on the merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."  *Id.*  Simply put, if "serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in Petitioner's favor in order to issue a preliminary injunction.  *Id.* at 1134–35.

### III.   ANALYSIS

#### A.   Likelihood of Success on the Merits

Both parties agree that Petitioner's detention is governed by 8 U.S.C. § 1226(a) ("§ 1226(a)").  (ECF No. 3-1 at 4; ECF No. 8 at 2.)  But while Petitioner argues he was denied the process § 1226(a) requires, Respondents claim Petitioner is lawfully detained under the statute because he was afforded a bond hearing and the IJ denied bond upon finding him to be a danger and a flight risk.  (ECF No. 3-1 at 7–8; ECF No. 8 at 4.)

Section 1226(a) provides:

> **On a warrant** issued by the Attorney General, a[ ] [noncitizen] may be arrested and detained pending a decision on whether the [noncitizen] is to be removed from the United States. . . . [T]he Attorney General--
>
> (1) may continue to detain the arrested [noncitizen]; and
>
> (2) may release the [noncitizen] on--
>
>> (A) bond . . . ; or
>>
>> (B) conditional parole[.]

§ 1226(a) (emphasis added).  "Issuance of a warrant is a necessary condition to justify discretionary detention under section 1226(a). . . . As such, it follows that absent a warrant a noncitizen may *not* be arrested and detained under section 1226(a)."  *Chogllo Chafla v. Scott*, 804 F. Supp. 3d 247, 264 (D. Me. 2025) (emphasis in original).

There is no evidence on this record that a warrant was ever issued for Petitioner's arrest.  Rather, the Government's description of Petitioner's arrest indicates the opposite – that he was

arrested and detained without a warrant. (*See* ECF No. 8-3 at 2–3.) As the record shows the Government did not comply with the express terms of § 1226(a), Petitioner's arrest and detention under that authority is improper.

The language of § 1226(a)'s warrant requirement is unequivocal and does not afford the Government forgiveness simply by providing a bond hearing after the fact. *Yociris P. v. Bondi*, No. 26-CV-1080 (ECT/EMB), 2026 WL 327937, at *3 (D. Minn. Feb. 8, 2026) ("Where the record shows Respondents have not identified a valid statutory basis for detention in the first place, the remedy is not to supply one through further proceedings." (quoting Order on Petition for Writ of Habeas Corpus at 6, *Vedat C. v. Bondi*, No. 25-cv-4642 (JWB/DTS) (D. Minn. Dec. 19, 2025), ECF No. 9 (citing *Munaf v. Geren*, 553 U.S. 674, 693 (2008))).) Instead, such a violation calls for release. *See*, *e.g.*, *A.E.R.T. v. Wofford*, No. 1:25-CV-01824-KES-SKO, 2025 WL 3645297, at *2 (E.D. Cal. Dec. 16, 2025) (finding immediate release the appropriate remedy where petitioner was arrested without a warrant in violation of § 1226(a)); *J.A.C.P. v. Wofford*, No. 1:25-CV-01354-KES-SKO, 2025 WL 3013328, at *8 (E.D. Cal. Oct. 27, 2025) (same).

The Court thus finds Petitioner has raised serious questions going to the merits of his claim that his detention violates federal law.[3]

### B. Irreparable Harm

Petitioner has established that he will suffer irreparable harm in the absence of preliminary relief. The Ninth Circuit recognizes "irreparable harms imposed on anyone subject to immigration detention," including "subpar medical and psychiatric care in ICE detention facilities, the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to [family.]" *Hernandez*, 872 F.3d at 995. Such harm is present here. (ECF No. 3-1 at 13.) Petitioner submits that his continued detention has brought devastating consequences for his economic livelihood. (*Id.*) Without relief, Petitioner faces the prospect of significant additional time in detention on top of the seven months he has already spent in

---

[3] Petitioner also challenges his detention as violating the Fifth Amendment Due Process Clause. (ECF No. 1 at 11–13.) As the Court finds Petitioner has set forth serious questions on the merits of his statutory claim, the Court need not address Petitioner's constitutional claim.

1  detention. (*Id.*) Moreover, as the Court has found, Petitioner's detention does not comport with
2  the language of § 1226(a). Depriving Petitioner of his liberty on a misapplication of § 1226(a)
3  causes irreparable harm. *See Lepe v. Andrews*, 801 F. Supp. 3d 1104, 1119 (E.D. Cal. 2025) ("As
4  other courts that have faced this issue have explained, the violation of petitioner's statutory rights
5  causes 'immediate and irreparable injury.'" (citing *Maldonado Bautista v. Santacruz*, No. 5:25-
6  cv-01874-SSS-BFM (C.D. Cal. July 28, 2025)). This factor thus weighs in Petitioner's favor.

### C.   Balance of Equities and Public Interest

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)). The Court finds these factors also favor Petitioner. Ensuring U.S. Immigration and Customs Enforcement adheres to all applicable laws and statutory requirements serves the public interest. *Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022) ("[I]t is clear that neither equity nor the public's interest are furthered by allowing violations of federal law to continue.") Additionally, "the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (internal citation omitted). In sum, the last two *Winter* factors also weigh in Petitioner's favor.

### IV.   CONCLUSION

Accordingly, to prevent further irreparable harm, the Court issues a PRELIMINARY INJUNCTION as set forth below. IT IS HEREBY ORDERED:

1. Petitioner's Motion for TRO, since converted into a Motion for Preliminary Injunction (ECF No. 3) is GRANTED.
2. Respondents must IMMEDIATELY RELEASE Petitioner from custody. **Respondents must file a notice certifying compliance with this provision of the Court's Order by March 9, 2026**.
3. Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with statutory and constitutional protections, including

seven-days' notice and a pre-deprivation/custody hearing before a neutral decisionmaker, where (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk. At any such hearing, Petitioner shall be allowed to have counsel present.

4. Respondents are ORDERED TO SHOW CAUSE why this Court should not enter final judgment on the merits of Petitioner's habeas petition. Respondents shall file responsive papers by **March 12, 2026**. Petitioner may file a reply by **March 19, 2026**. The matter is not set for a hearing, though the Court may set one should it later be determined that a hearing is necessary.

5. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived. Courts regularly waive security in cases like this one. *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011).

IT IS SO ORDERED.

Date: March 4, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE